The last case on our call this afternoon is 106078, agenda number 5, People v. Charles Robinson. Counsel may proceed, Mr. Miller. Good afternoon, Your Honors. May it please the Court, Darren Miller on behalf of the appellant petitioner Charles Robinson. Your Honors, this case, in my opinion, is essentially a reasonable doubt case. Mr. Robinson stands convicted of the offense of domestic battery for an alleged punch to Trevisa Conner's face, which did not so much as leave a mark on her. The statement, the sole evidence that a punch was even thrown, it comes from Ms. Conner's out-of-the-court statement, quote, My boyfriend punched me in the cheek area. Mr. Robinson is my boyfriend. My boyfriend flipped out. These 17 words purportedly stated by the alleged victim constitute the sole evidence that Robinson so much as touched Conner, let alone battered her. Further, Conner's statements that Robinson punched her in the cheek area does not come from her trial testimony. In fact, she did not testify at trial. Instead, the sole evidence comes from the testimony of Aurora Police Officer Lyle Nettles. He was allowed to testify regarding Conner's purported out-of-court statement after the court ruled that it fell within the excited utterance exception to the hearsay rule. Therefore, the only evidence that Robinson even touched Conner comes from uncorroborated alleged hearsay statement. The defense maintains that Mr. Robinson was not proven guilty for two reasons. First, the hearsay statement, the excited utterance, was improperly admitted, and without that, there is no evidence that a punch was even thrown. Second, even if that hearsay statement were properly admitted, the state still failed to prove the case beyond reasonable doubt as that statement and the other evidence does not establish that a punch was intentionally thrown. For an excited utterance, there are three factors for its admissibility. First, the occurrence has to be sufficiently startling to produce a spontaneous and unreflecting response. Second, there has to be an absence of time to fabricate the statement. And third, the statement must relate to the occurrence. Regarding the first factor, the sufficiency of the startling occurrence, Your Honors, it's our position that a punch that does not even leave a mark on an individual is not sufficient to fall under the excited utterance exception to the hearsay rule. However, the state claims, and I believe they even concede that that isn't sufficient, but they claim that, well, if you look at the incident as a whole, that there was blood spatter throughout the apartment, that there was a hole punched in the interior wall, there was broken glass on a door and mirror. Robinson was bleeding heavily from his right hand. And when Robinson was yelling and acting irrational when Nettles arrived, they claimed that that as a whole is adequate to produce a spontaneous reaction. But even if that is the case, and if you're going to accept that that is enough, then the state fails in that it didn't meet its burden under the second and third requirements of proving as a proponent that there was an absence of time to fabricate and that the statement was related to the occurrence. The state as a proponent bore the burden of establishing that Connor had no time to fabricate and that her statement that the defendant hit her was related to the occurrence of his outburst. Here the state did not lay an adequate foundation. There was no evidence, independent of her statement, that Connor was even hit. We have no idea when, if ever, Robinson punched Connor. There is no evidence that Robinson's outburst was even related to Connor or in fact that he was even angry with Connor. We have no idea. He could have found out he lost his job or found out his mother died. We have no idea why he was angry. And I did cite in my brief the case that I feel is on point. It's called In Re JS. And in that case, the court basically held that a robbery statement that, quote, girl, I've been robbed was not admissible as an excited utterance despite the fact the alleged victim had bruise on her arms because there was no independent evidence that the robbery occurred. And I submit that the same is in this case, since there is no independent evidence that the battery occurred, that it should not be admissible as an excited utterance and the state failed to. If there was evidence of a nexus between any battery, for example, and the agitated outburst, is your argument different or is it still a time factor to you? Well, I think in this case, if there was a nexus, then time isn't a factor. So I would say they kind of go hand in hand in this case, I feel. So if there was a nexus and the police show up and the defendant is still agitated, even if the actual battery occurred earlier, you wouldn't have the same problem. You're just saying there's no relationship, or at least proof of any relationship between the outburst that's occurring and what allegedly occurred. Well, I think given that his hand was bloody and he was still acting irrationally, I think it's, I mean, we're not disputing that he was angry and was punching the wall or that that was even near enough in time to when the officer came. I think the problem is that there's no evidence that what she stated, that he hit her, was in any way related to that. And so I guess the time element kind of goes hand in hand with that. Any reasonable inferences that can be drawn that call to the scene, hand bloody, punching the wall, that it could be related to the domestic battery? Well, Your Honor, I think that the state, you know, they're the proponent, and I feel that they have the burden to establish the time of the battery. And this is an unusual case because in most of these excited utterance cases, what the exciting event is usually what they're uttering. Like if someone sees someone get shot, it's like, oh, I just saw him get shot. In this case, you know, for some reason the, you know, if his outburst and punching the wall is the exciting event, well, she really doesn't even mention that in her statement. And I find that a little unusual, and I think that should also bear on whether it's admissible that if this event was so exciting and so startling that it prompted her, you know, to state an excited utterance, then why didn't she even mention it in her utterance? Is it true that the record shows that the officer was called in response to a domestic dispute?  Disturbance. Correct. And that when he arrived, she was crying and appeared very upset? Correct. And all that evidence, I believe, Your Honor, is consistent with the fact, which we're not disputing, that Mr. Robinson was angry and was punching the wall. And that would be a domestic disturbance if someone's at home punching holes in the walls, blooding their hand, breaking windows. I think actually that point favors us. The call was not related to a domestic battery. It was a domestic disturbance. But wasn't her response that you elicited in response to the officer's question about what happened? Well, I think a spontaneous utterance is supposed to be just that. It's supposed to be spontaneous. I mean, the cases of hell that, you know, simple questions is like, what happened don't necessarily destroy spontaneity. But I don't think that you can take from her statement that she had been hit and infer from that that it all occurred as part of the same incident. You don't think that raises some inference that she wouldn't be talking about, he hit me two days ago when he says what happened? Well, I don't – that may be true and it may not be true. I just don't think that the evidence is there one way or the other as to why she said what she did. Perhaps she said that it was a reflecting statement. Perhaps she said that he hit her in order to get him out of the apartment because she didn't want him destroying her apartment. And the apartment didn't belong to her, presumably, if she's renting it. And so I assume that she didn't have the ability to press charges on him. Isn't the only issue we have is whether the statement is close enough in time to the battery itself? Yeah, and I think that goes hand in hand with whether it's related to the circumstances. What you're saying is from the evidence in this case, you don't know when the battery occurred? Correct. Correct. There's no evidence as to when the – or even that the battery, in fact, occurred. There's no evidence apart from her statement that the battery even occurred and no evidence even with her statement as to when the battery occurred. Mr. Miller, I believe you started by saying this is really a sufficiency of the evidence case. Yes. Am I to assume by that you don't have any real quarrel with the general versus the specific? Yes. Well, yes. Exactly. I don't believe that that really impacts this case because the issue in this case is whether the defendant intentionally contacted, made physical contact with Ms. Conner. And I think under whether battery is a general or specific intent crime, and I believe the state agrees, they still have to prove under either definition at a minimum that the defendant intentionally made contact with her.  Whether it's battery is a specific or general intent crime, although the courts do seem to be all over the board as far as, you know. You do point out or argue in your brief, though, I think at some point that you say that the state has to prove knowing contact and knowing and intending that the content was insulting or provoking. Yes. You're saying that second part of it isn't necessary then? Well, I think that it's necessary, and that's still my position. But for this case, it's not our contention. If you're going to find that there is sufficient evidence that he punched her, I'm not going to stand before you and say, well, yeah, he punched her, but he didn't, you know, intend for it to be insulting or provoking. So I just don't see it pertinent as far as the specific facts of this case. I do, however, think that it's important for future cases that, you know, if a defendant, say, taps someone on the shoulder, they're not found guilty of a battery because a victim has some kind of a crazy response to it and is, you know. In response to a question or remark by Chief Justice Fitzgerald, you indicated it's a matter of the time when the alleged punch occurred and the time when the statement was made as to whether it's an excited utterance. Can we take into consideration what appears to be the facts that from the time, apparently, that the call was made, at least until the police officer got there, the boyfriend was still flipping out, he was still out of control, I think, as you said. Does that make a difference with regard to the ability of the declarant to fabricate the statement because there's such a state of uproar there? Would it be different if the call had been made at 1.30, the cops arrived at 2.15, and everybody's sitting around having a cup of tea and there's no problem? Well, I mean, certainly. I mean, the more distant the excited occurrence is, the better, I guess, for the defense. But I don't think that that necessarily destroys it. Can we take that into consideration? I think that's what the state argues. It's the whole, the totality of the circumstances that makes the utterance still excited. Right. But, again, I feel that there's no evidence the battery was connected to the excited statement. And I think that's why I'm saying it's not just only a time issue. Yeah, it's part of a time issue. I mean, say they'd been arguing all day, maybe he hit her earlier in the morning, and then later on in the day there was another, they get into another argument, and he starts hitting the wall and going crazy, and then she makes a phone call. I think the law is that if the battery is not related to the startling occurrence, then it's not admissible as an excited utterance. And there's just no evidence as to when the battery occurred. Counsel, if the victim refuses, in cases where victims refuse to testify, the state would never be able to get a conviction if there wasn't a properly admitted statement. Well, I would disagree with that because, you know, had there been some independent evidence that this happened, you know, had the police arrived and she had a bruise on her face, I wouldn't be standing here making that argument. But isn't that where the totality of the evidence, the surroundings, I mean, after all, when the police officer did arrive, he was still, the defendant was still acting irrationally, and there was blood and glass all over the place. I mean, isn't that part of what the court needs to know? Well, I mean, every case is evaluated on its own facts, I think. This particular case, where the circumstances show that, besides her saying that, the circumstances show that he was, the officer testified he was acting irrationally. Yeah, and that's something to consider, but that still doesn't establish that the battery was connected with its outburst. In fact, I think the evidence tends to disprove that because someone who's punching holes in walls, shattering windows, you know, punching through mirrors, if he were to punch her during this, you know, rage, I believe it's more likely than not that he would have left a mark on her. So I think, you know, as far as future cases, you know, yeah, if you're talking about a case where there's no corroborating evidence as to when the punch occurred, then I would agree. But in most cases, the police will come and someone will be bloody or there will be some type of evidence or witness or something, independent of the statement itself that it occurred. But even if the statement is admitted and the court does consider it, the fact remains that the state still did not prove its case beyond a reasonable doubt. The battery statute reads that a person commits domestic battery, if he intentionally or knowingly, without legal justification, by any means makes physical contact of an insulting, provoking nature. And again, I... Wouldn't the actions with the defendant be insulting or provoking, even if it was not a horrific punch? Sure. Again, I'm not challenging the insulting or provoking aspect of this. What I am challenging is whether the state proved that the punch, that he intended to punch Connor or knowingly punched Connor. The facts in this particular case is that the defendant was in a rage, out of control, even by the officer's testimony, punching holes in the wall. And it's just as likely, perhaps more likely, that the defendant, if he did hit her, and if it was actually connected to the circumstances of the occurrence that it happened, accidentally, maybe perhaps when he was cocking back he hit her, maybe he grazed her while he was punching at the wall. And again, the evidence is that he was in such a state of rage that he was punching so hard that he's punching holes in the wall. Well, had he intentionally punched her, I think it's more likely than not that there would be a mark on her. Again, I think that this Court should be, and the state says correctly, that the evidence has to be reviewed in a light most favorable to the state. However, the Court should not be speculating in a light most favorable to the state. And I believe that it's pure speculation as to whether this was an intentional punch or knowing punch when there's no evidence or no witnesses. In fact, the state had witnesses to call. There were other people at the scene. They didn't call them. In fact, they only issued a notice to appear to Connor and didn't even subpoena her to the second trial. So we don't know why that happened. But in conclusion, Your Honors, I'd ask that you reverse the defendant's conviction for lack of proof beyond reasonable doubt. Thank you. May it please the Court. Counsel, my name is Leah Myers-Bendick from the Illinois Attorney General's Office on behalf of the people of the state of Illinois. Indeed, this case does present two issues. Whether the victim's hearsay statement was properly admitted as an excited utterance, and secondly, whether the defendant was proven guilty beyond a reasonable doubt. The appellate court found both that the statement was admissible and that the evidence was sufficient and this Court should affirm. Officer Nettles responded to this scene of the domestic disturbance,  My boyfriend punched me in the cheek area. Mr. Robinson is my boyfriend. My boyfriend flipped out. In reviewing the trial court's finding that this was admissible, this Court, as a reviewing court, applies the deferential abusive discretion standard of review and uses a totality of the circumstances test, which does focus, as defendant noted, on three factors. First, whether the startling occurrence was sufficiently startling. Second, whether there was an absence of opportunity to fabricate the statement. And finally, whether the statement was adequately related to the startling occurrence. Now, the people's position is that the startling occurrence here was defendant's ongoing outburst rather than the single punch standing alone. And indeed, this is what the appellate court held was a sufficiently startling event. And this ongoing outburst included not only that defendant punched Connor, but also that he punched a hole in the wall and that he broke both a sliding glass door and a mirror with his fist, leading to broken glass and blood being splattered throughout the apartment. Now, indeed, this was sufficiently startling. This Court can look to other precedent that also recognize sufficiently startling events. For example, such as finding that an accidental injury is sufficient or even observation of a crime where no injury results has been found to be sufficiently startling. For example, in the case of SEPCA, that is a case where a car was pulled over during a traffic stop and the police officer approached the car and demanded money from the occupants. This was found to be sufficiently startling. And certainly that experience would be startling, but it did not involve any property damage or injury like we had in this case. Secondly, there was no opportunity for Ms. Connor to fabricate under the circumstances. And there are several circumstances that support such a conclusion. First of all, the incident occurred at 1.30 a.m. and the police were dispatched at 2.02 a.m. So this was a very short period of time. And, indeed, at the time that Nettles arrived, he noted that the defendant's hand was still bleeding heavily, which supports the inference that his violent actions had only very recently ended. And, indeed, Connor herself still appeared very upset and was crying, showing she was still under the stress of what she was witnessing and experiencing. Also, she made her statement in response to a single, short, general question from Officer Nettles. He asked her what happened. And defendant concedes that that type of general question does not destroy spontaneity. What in this evidence, counsel, would establish beyond a reasonable doubt that if, in fact, defendant punched Connor, he did so intentionally or knowingly? The best evidence of knowing, and, again, knowledge under Illinois law is defined where a person is consciously aware that actions resulted or is aware that acts are certain to cause a result. So under that standard, this punch was knowing because of the phrase that Connor used. She used the phrase, my boyfriend punched me. And common sense understanding of this term is that a punch is a deliberate action. Perhaps in defendant's description, if he had just been flailing as a part of his property destruction, that would best be described as he elbowed me maybe, he hit me. Those are terms that are viewed as less deliberate perhaps. Isn't that the rub, though, too, that the only evidence then is a hearsay statement that isn't subject to cross-examination? I mean, there was no opportunity for the defendant to say, did you mean hit, did you mean, you know, what exactly did the word punch mean? And then isn't it as likely, since this tirade is going on, that it was unintentional, if indeed he did hit her in some fashion? Well, that's one interpretation, but it's an equally plausible interpretation of the events that it was intentional. It's just as likely that perhaps he punched her first. It is just as likely. Doesn't that raise doubt, though, reasonable doubt? Well, again, viewing the evidence in the light most favorable to the prosecution, that under the circumstances here, defendant was using his fist as a weapon in multiple occasions. He was punching holes in the wall. He was breaking mirrors. And it's certainly the fact that she said, he punched me, reflects the deliberateness of the action. Yeah, and I go back to my initial question. The question may be never even asked if indeed Connor is testifying in court and subject to cross-examination. But is it enough to convict somebody based on one statement that isn't even subject to cross-examination when there are as reasonable inferences going the other way? Well, there are cases under Illinois law where a hearsay statement in and of itself has been found to be sufficient. So that would also be a situation where there's no cross-examination. In the case of People v. Meredith, although defendant discusses the potential other evidence that was involved here or involved in that case, the appellate court said their MM statement to Penny in the park fell within the spontaneous declaration exception to the hearsay rule and thus was admissible and sufficient to sustain defendant's conviction. So here's an example of another case where a hearsay statement alone was identified by the appellate court as being sufficient to convict. And there are several other citations that people made at pages 37 and 38 of the brief. Certainly we recognize your concern, Justice Thomas, but because of the circumstances of the case, defendant was agitated and the fact that Connor was observed to be very upset, to be crying, the appellate court here made a reasonable, supportable inference that if she were asked, having just witnessed all of this property destruction, for example, that in the first question that was asked to her while she was still visibly upset, that when she was asked what happened, that she would identify the punch as being her first spontaneous response is actually quite powerful. And that is because, assuming under defendant's hypothetical that perhaps the punch occurred days before or hours before, if she was still upset after viewing this very disturbing scene of her boyfriend destroying their own apartment, injuring himself, that her first spontaneous reaction to the statement was to be that he punched me, that is actually quite powerful. Not only is it admissible. I know I'm being somewhat redundant, but no cross-examination as to was it intentional, was it unintentional, why didn't you sign a complaint against him, none of these questions could be answered. Did you set punch, could you have men hit, could you have men struck, that appears problematic. We have one piece of hearsay, testimony, and you would say, I mean, that's the ballgame, right? The entire conviction is based on that statement. If the statement were not admitted, we would concede that the conviction could not stand. But the statement alone was not the only evidence here, though. I would continue to emphasize that the circumstances, both of defendants continually to appear enraged, the fact that Connor was still upset, and again, the reason why excited utterances are allowed to be admitted is because they are deemed reliable, that the circumstances reflect an absence of opportunity to fabricate. And here, not only is it admissible, but it certainly reflects how strong and reliable it was because only a matter of minutes had passed, and indeed, as Justice Burke observed, because he was still enraged at the time that the police officer arrived, arguably, perhaps there was no break in this excited utterance, or excuse me, in this startling occurrence until the statement was made. If we could go back for a moment to what I think you said, and give you a chance to tell me I was wrong in what I heard, that it's just as likely that it was an accidental as an intentional or knowing hit? I would probably choose different words, if given the opportunity to say that again. Those were the words that you chose. Well, actually, what I would say, to refine that slightly, would be that defendant is merely speculating about what happened, and what the appellate court held here was that a reasonable inference of what occurred in view of... Oh, I'm sorry. I'm going to put it this way, and let you have your refinement of words, of course you can. But if we decide that it's just as likely that it was an accident as intentional, wouldn't we be bound then to enter a reversal in the basis that no reasonable jury could ever find somebody guilty beyond a reasonable doubt on an issue that could have been one way or the other, 50-50? Perhaps. But I would preface that response by saying, again, that because we're on appellate review here, that evidence has to be viewed in the light most favorable to the prosecution. So again, it wouldn't be 50-50. In the light most favorable to the prosecution, 50-50 proof is a not guilty, wouldn't you say? I would say that it's not 50-50 if viewed in the light most favorable to the prosecution, that looking at the situation in that manner is an objective evaluation rather than looking at what reasonable inferences can be made in light of the standard of review. So that is the key here. Because of this deferential standard of review, it really isn't a 50-50 situation. Both the trial court and the appellate court looked at this evidence and found it to be sufficient. And here, because the evidence must be viewed in the light most favorable to the prosecution, then certainly because of the reliability of the excited utterance here, it was compelling evidence of guilt. She used the term punch. And perhaps, yes, it was not subject to cross-examination. But if someone flails behind and somehow accidentally grazes someone in the cheek, in an ordinary sense, no one would say that that person punched me. Maybe they would say they... The choice of words here is very notable. The word punch, in our common sense understanding, reflects a deliberate action. And so not only that, but the fact that he used his fist to destroy other things in the apartment, and because Connor, when appearing so upset, when asked the general question of what happened, her first response was to note that he punched her. And looking at it from her perspective, if she witnessed this property destruction, she witnessed the defendant injuring himself... You have admitted that you perhaps made a bad choice of words. Could this witness have made a bad choice of words in describing punch or hit? It's hard to say. Sure, I guess I have to say that's possible. But again, because she was asked what happened, this was her initial spontaneous response, which, given the short period of time, given she was still upset, given the defendant was still enraged, that is compelling in support of the reliability of the accuracy of what she was saying. And also... The defense counsel indicates that you have the burden of convincing the trial court, I guess at least, and perhaps us, that this was an excited utterance that would be admissible into evidence, and you accept that. Certainly. With regard to whether or not the declarant had the opportunity to fabricate the statement, do you have a burden to show that there was no opportunity to fabricate it? Well, it's more that it's one factor to consider in the totality of the circumstances. So even if that factor isn't shown, that does not automatically mean a statement is inadmissible. It is instead one of the main factors looked at in the totality. So certainly where there's less time, it's a stronger case for admissibility. And if it's longer, then it's a weaker case as to that one factor. But it's just simply one factor to be considered. Can we look at the language that the declarant used to determine whether it was fabricated? Say, for example, if someone in response to a question said, what happened, and she said, well, the perp struck me intending to cause me great bodily harm, would you think maybe that was fabricated? Sure, I think that would be a fair inference from a statement phrased that way. Then can we look at her language where she says, she doesn't say, he hit me in the face, he hit me in the cheeks. She says, he hit me in the cheek area. Mr. Robinson, my boyfriend. Can we look at that and consider? Does that sound like a normal response to what happened? Well, certainly it is placed in quote in this bystander's report, but this Court should remember it is a bystander's report. So it's actually not 100% certain. That's the words she specifically, that's what we have. And this Court allows for bystander's reports in lieu of transcripts. And so it's certainly possible, while we wouldn't expect that someone would call their boyfriend Mr. Robinson, for example, that that was just the way the attorney who drafted this phrased it, because that's the way the attorney was thinking of that person. So that is the record as we have it here. Well, let's assume that she said punch. I mean, you're using punch to establish intent. But based on this set of circumstances, even a punch doesn't necessarily mean there's intent attached to it, right? I mean, you could definitely clench your fist and attempt to punch the wall and a face gets in the way, right? Well, indeed, under the definition of knowledge, which was the mental state identified here, so long as there's an awareness that the results are practically certain to result, that's sufficient. We're not talking about intent here. We're talking about knowledge. So directing a fist in the vicinity of someone's head is a knowing punch under Illinois law. Well, it doesn't even necessarily have to be in the vicinity, right? Somebody can move. Somebody can be leaning over. I mean, there's all kinds of things that someone could throw a punch and it not be even knowing. Well, if it's a natural consequence to expect, perhaps if the person didn't know this other person was going to run in front of them, that would be a factor. But if someone's nearby and you direct a close fist in that vicinity, that would satisfy knowledge as it is defined under Illinois law. So even though a defendant uses the word intent in perhaps the general sense, what he was charged with here was knowing rather than intentional. So then turning to the sufficiency beyond a reasonable doubt, I'd like to just very briefly note that there is this issue raised by the appellate court of whether battery is a specific or general intent crime. I would simply note that this is only an apparent split rather than a substantive split of the appellate court. Instead, the appellate court uses two different definitions for the term specific intent. And certainly as a general matter, because this court is the highest court of the state, there would be good use for this court to clarify how this term should be used to resolve and create uniformity in this area. But the people do agree with defendant that in a sense it doesn't affect specifically this case. Defendant tries to claim that the element under this offense of making contact of an insulting or provoking nature requires a mental state to attach both to the action of contact as well as to the consequence of insult or provoking, but that is simply not supported under the case law. He does concede under the facts here that a punch, certainly under the facts of this case, is deemed insulting or provoking. But for the more general point, that is not the way offenses that have both an action that is limited by a consequence are viewed. After all, it is a general principle under Illinois law that a person is held to contemplate and be responsible for the natural consequences of his or her actions. So long as the contact is intentional, if there are natural consequences, that already is held to be sufficient. And a good example is the case of in raid Joel L. where a juvenile was adjudicated delinquent for battery for causing bodily harm. There he testified that yes, he kicked a table intentionally. A police officer sitting nearby injured his arm when it got trapped between that table and a nearby table. And the juvenile testified, well, I didn't mean to hurt him. But nonetheless, that conviction was upheld because yes, he intended the action and the consequence was a natural result. So that is the way that this element should be regarded. So then because the defendant only contests the intentional or knowing and also that the punch occurred, this Court need not be concerned with the family or household member element, for example. But the most powerful evidence here that the punch occurred indeed was the statement of Connor. And the circumstances here reflect not only that it was an admissible excited utterance, but also that it was a particularly reliable and compelling one. Because of the very short period of time that elapsed here, that she was still visibly upset when she was talking to the police officer, that defendant was still acting in an enraged state that was observable by Nettles, which wouldn't, as Justice Carmeier noted, would impede the ability for Connor to be sitting and reflecting and potentially fabricating her statement. And indeed the fact that she did not sign the criminal complaint and she did not testify at trial showed she did not have some kind of pre-planned motive to try to get her boyfriend into trouble. No, just as a spontaneous response to a single question, she made the statement while still under the stress of that situation. And that is why it is reliable and compelling evidence that the punch occurred. And again, as already explored, so long as this fist was directed in the vicinity of Connor's head, this is a knowing punch as it is defined under Illinois law. And so again, viewing the evidence in the light most favorable to the prosecution, this should be viewed as adequate, sufficient evidence to convict. So then if there are no questions from this court, I would just request that this court affirm. Thank you. Thank you. Counsel said something interesting, which I hope I heard her correctly, I'm not mistaking her, but I believe she said that she's not 100% certain what Ms. Connor said because it's a bystander report. That's just another reason why the evidence is insufficient here. I mean, the state's here conceiving that. We don't even know. Now they're conceiving we don't even know what she even said. You have someone stating something which sounds like cap talk, to use a street term, I guess. My boyfriend hit me. My boyfriend is Charles Robinson or however it was phrased. It just doesn't sound like how people speak. She doesn't show up to court. None of the other witnesses. There are other witnesses here, too. They don't show up to court. And now we're not even 100% sure what was said because it's a bystander report. And we're also not 100% sure. Perhaps the officer got the language wrong. Maybe she did say, oh, Charles Robinson hit me, and he remembered and just punched me. We just don't know. And that's what creates the problem here. There's just flat out no evidence that the defendant intentionally punched Ms. Conner given the circumstances of this case. You used the word intentionally. Do you want to address the knowingly in the vicinity of argument? Well, again, there's no evidence. We have no idea what he knew when he was so in his rage, where she was, whether he knew where she was. There's just no evidence. It's the state's burden, Your Honor. And, you know, knowingly, intentionally, whatever, they just seriously dropped the ball as far as proving enough facts to prove this case beyond a reasonable doubt. The case did cite some cases. I think Meredith, which it claims stands for the proposition that an argument is good enough to sustain a conviction. And it cited at least three out-of-state cases, Williams v. State, Commonwealth v. Maquette, and People v. Anthony O. But if Your Honors get a chance, and while you're working on this case, if you were to pull those cases, each one of those cases has some corroborating evidence that whatever the crime was at issue occurred there. In Meredith, there was a babysitter with a child, and the defendant was accused of improperly touching her, and the babysitter saw the child step away and say no. Well, if the state presented evidence here where one of these other people didn't actually see the battery but were able to come testify, you know what, I didn't see the battery, but I heard Ms. Conner say ow and hold her eye, well, that would be corroborating evidence, and that's what you had in Meredith. For Williams v. State, there was physical evidence. There was a lump on her forehead. For Maquette, there was a cut on the hand when the child claimed he was hit on the belt, hit by a belt on his hand. And for each one of these cases, there was corroborating evidence. And I'm not claiming that I know every single case that's ever come down, but to my knowledge, this case is the first published case which has truly held an excited utterance in and of itself with no corroborating evidence. And as Justice Thomas pointed out, no ability to cross-examine the accuser is deemed sufficient to sustain a conviction. And certainly in this case, I don't feel that it is. And if there are no other questions, thank you. Thank you, counsel. Case number 106078 is taken under advisory.